RAYMOND P. BOLAÑOS (SBN 142069)
AT&T SERVICES, INC., LEGAL DEP'T
430 Bush Street, 6th Floor
San Francisco, CA 94108
Telephone:  415.268.9491
Facsimile:   415.543.0418
*raymond.bolanos@att.com*

AARON M. SHANK (*Pro Hac Vice*)
PORTER WRIGHT MORRIS & ARTHUR LLP
41 South High Street, Suites 2800 – 3200
Columbus, Oh 43215
Telephone: 614.227.2110
Facsimile: 614.227.2100
*ashank@porterwright.com*

Attorneys for Plaintiff
New Cingular Wireless PCS, LLC d/b/a AT&T Mobility

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, D/B/A AT&T MOBILITY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF HUNTINGTON BEACH, CALIFORNIA,<br><br>Defendant. | Case No. 8:23-cv-01972-FWS-JDE<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**AND**<br><br>**REQUEST FOR EXPEDITED REVIEW PURSUANT TO 47 U.S.C. § 332(c)(7)(B)(v)** |

///

///

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-1-

Plaintiff New Cingular Wireless PCS, LLC, d/b/a AT&T Mobility ("AT&T"), a limited liability company organized and existing under the laws of Delaware, complains against Defendant City of Huntington Beach, California (the "City") and alleges as follows:

## JURISDICTION AND VENUE

1.      This action arises under the laws of the United States, including the Communications Act of 1934, as amended by the Telecommunications Act of 1996, 47 U.S.C. § 332 ("Act"). This Court has jurisdiction over these claims pursuant to 28 U.S.C. §§ 1331 (federal question) and 1337 (commerce). The Court's authority to grant declaratory relief and related injunctive relief is based upon 28 U.S.C. §§ 2201-2202, because an actual controversy exists.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because AT&T's claims stated herein arose in this judicial district.

## INTRODUCTION

3.      AT&T seeks declaratory and injunctive relief based on the City's denial of AT&T's application for a conditional use permit (the "Application") for construction, operation, and maintenance of a stealth wireless communications facility to be disguised as a 60-foot broadleaf tree with all antennas concealed behind faux foliage (the "Proposed Facility"). The Proposed Facility is to be located in the parking lot of the Huntington Beach Community Church, which is located in a commercial zoning district at 8101 Slater Avenue in the City (the "Site").

4.      Federal law limits the ability of municipalities to block the installation of such facilities, based on nationwide goals of promoting widespread availability of advanced, reliable wireless services. The Proposed Facility is needed to close AT&T's significant gap in its personal wireless services in this portion of the City. The Proposed Facility is the least intrusive means to close that significant gap.

First Amended Complaint for Declaratory and Injunctive Relief and Request for Expedited Review
Case No. 8:23-cv-01972-FWS-JDE

-2-

5.      The Proposed Facility will provide and improve important wireless services, including wireless services on AT&T's 4G LTE and 5G network, as well as FirstNet services to support first responder communications. AT&T has conducted a comprehensive search for appropriate sites and designs for the Proposed Facility. AT&T thoroughly investigated and analyzed alternative locations and designs for the Proposed Facility.

6.      On the strength of AT&T's Application and the location and design of the Proposed Facility, City Staff recommended approval of AT&T's Application. After approval by the City Zoning Administrator, which was sustained by a tie-vote on appeal to the Planning Commission, the City Council heard the subsequent appeal and voted 4-3 to deny the Application.

7.      The City's denial of AT&T's Application violates Section 332 of the Federal Communications Act of 1934, as amended by the Telecommunications Act of 1996 (the "Act"), 47 U.S.C. § 332, which limit the power of municipalities to regulate the deployment of telecommunications and personal wireless service facilities. These provisions also forbid municipalities from denying applications without substantial evidence; forbid municipalities from acting in a manner that may prohibit or have the effect of prohibiting personal wireless services; and forbid discriminatory treatment in processing applications for such facilities.

8.      The City has effectively prohibited AT&T's installation of personal wireless service facilities. The City's denial is an effective prohibition of personal wireless services and is not supported by substantial evidence in the written record, in clear violation of federal law. The City has also unreasonably discriminated against AT&T by denying the Application despite having previously approved substantially similar applications from AT&T's competitors that provide functionally equivalent services. The City has also abused its discretion in denying AT&T's Application, and its actions were arbitrary and capricious.

First Amended Complaint for Declaratory and          -3-
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

## PARTIES

9.     Plaintiff AT&T is a limited liability company duly organized, existing, and operating under the laws of Delaware, with its principal place of business in Atlanta, Georgia, and with offices at locations throughout California. At all times relevant herein, AT&T has been and is qualified to do business in California. AT&T is a wireless telecommunications carrier that provides personal wireless services and other telecommunications services within the meaning of the Act.

10.     The City of Huntington Beach is a California political subdivision organized and existing under the laws of the State of California.

## NATURE OF THE CASE

11.     By this action, AT&T seeks declaratory and injunctive relief in the form of an order compelling the City to issue forthwith a conditional use permit and all other necessary approvals and authorizations to construct, operate, and maintain the Proposed Facility.

12.     The declaratory and injunctive relief requested herein is necessary and appropriate because the City has violated the Act by effectively prohibiting AT&T from providing personal wireless services in the City, failing to act on the basis of substantial evidence, and by unreasonably discriminating against AT&T.

## THE TELECOMMUNICATIONS ACT

13.     "Congress enacted the Telecommunications Act of 1996 (TCA), 110 Stat. 56, to promote competition and higher quality in American telecommunications services and to 'encourage the rapid deployment of new telecommunications.'" *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 115 (2005). "One of the means by which [Congress] sought to accomplish these goals was reduction of the impediments imposed by local governments upon the installation of facilities for wireless communications, such as antenna towers." *Id.* In an effort to prioritize and streamline deployment of wireless technologies on a national basis, the

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-4-

Act restricts the authority of state and local governments to regulate "the placement, construction, and modification of personal wireless service facilities" (47 U.S.C. § 332(c)(7)(B)).

**Effective Prohibition**

14.     The Act significantly limits state and local governments from regulating the provision of personal wireless services. Among these limitations is 47 U.S.C. § 332(c)(7)(B)(i)(II), which prohibits a local government from denying an application for a wireless telecommunications facility when doing so would "prohibit or have the effect of prohibiting" the provision of wireless telecommunications services.

15.     The Federal Communications Commission ("FCC") has long held that an effective prohibition under the TCA occurs whenever a decision of a local government "materially inhibits" wireless services. *See In the Matter of California Payphone Assoc. Petition for Preemption, Etc.*, Opinion and Order, 12 FCC Rcd. 14191 (FCC rel. July 17, 1997).

16.     The FCC more recently confirmed that under the TCA, a "state or local legal requirement has the effect of prohibiting telecommunications service when that legal requirement 'materially limits' or inhibits the ability of any competitor or potential competitor to compete in a fair and balanced legal and regulatory environment." *Accelerating Wireless Broadband Deployment by Removing Barriers to Infrastructure Investment,* Declaratory Ruling and Third Report and Order, FCC 18-133, 30 FCC Rcd 9088 (September 27, 2018) ("*Infrastructure Order*"), ¶ 35. In other words, "an effective prohibition occurs where a [local regulation] materially inhibits a provider's ability to engage in any of a variety of activities related to its provision of a covered service." *Id*. at ¶ 37.

17.     An analysis of an effective prohibition "focuses on the service the provider wishes to provide, incorporating the capabilities and performance characteristics it wishes to employ, including facilities deployment to provide existing

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-5-

services more robustly, or at a better level of quality." *Infrastructure Order*, at n.95. Thus, a local government "could materially inhibit service in numerous ways – not only by rendering a service provider unable to provide existing service in a new geographic area or by restricting the entry of a new provider in providing service in a particular area, but also by materially inhibiting the introduction of new services or the improvement of existing services." *Infrastructure Order*, ¶ 37.

18.     A wireless carrier may demonstrate an effective prohibition by showing there is a "significant gap" in service and the proposed installation is the "least intrusive means" of closing that gap. *See T-Mobile USA, Inc. v. City of Anacortes*, 572 F.3d 987, 995 (9th Cir. 2009). If there is a significant gap in service and the proposed installation is the least intrusive means for filling that gap, a municipality must grant the permit application. *See* 47 U.S.C. § 332(c)(7)(B)(i)(II) (local regulations "shall not prohibit or have the effect of prohibiting the provision of personal wireless services").

19.     When a wireless provider presents evidence of a significant gap and the absence of a less intrusive alternative, the burden shifts to the local government to prove that a less intrusive alternative exists. *See City of Anacortes*, 572 F.3d at 998-99; *T-Mobile West Corp. v. City of Agoura Hills*, 2010 U.S. Dist. 134329 (C.D. Cal. Dec. 20, 2010). To meet this burden (and overcome the presumption in favor of federal preemption), a local government must show that another alternative is available that fills the significant gap in coverage, that the alternative is technologically feasible, and that it is less intrusive than the proposed facility. *Id.*

**Substantial Evidence Requirement**

20.     State and local governments may only deny an application for a telecommunications facility based on "substantial evidence." 47 U.S.C. § 332(c)(7)(B)(iii). This means that a local government's decision must be "authorized by applicable local regulations and supported by a reasonable amount of evidence." *Metro PCS, Inc. v. City and County of San Francisco*, 400 F.3d 715, 725 (9th Cir. 2005)

First Amended Complaint for Declaratory and                    -6-
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

(abrogated on other grounds). Thus, to deny a permit application, a local government must have specific reasons that are both consistent with the local regulations and supported by substantial evidence in the record.

**Unreasonable Discrimination**

21.     The Act also prohibits state and local governments from unreasonably discriminating among providers of functionally equivalent services. 47 U.S.C. § 332(c)(7)(B)(i)(I). A siting authority violates this provision of the Act when other providers of functionally equivalent services have been permitted to construct similar structures at similar sites in the locality. *See Metro PCS, Inc.*, 400 F.3d at 727-28.

FACTUAL BACKGROUND

**AT&T's Need for the Proposed Facility**

22.     AT&T provides personal wireless services and other telecommunications services to its customers throughout the area relevant to this Complaint pursuant to frequency licenses issued by the FCC. When AT&T identifies a significant gap in its wireless service coverage, AT&T investigates the nature and extent of the need for improvement and identifies ways to close that gap.

23.     AT&T has a significant service coverage gap in the City in the vicinity of the Proposed Facility. AT&T needs to construct the Proposed Facility to provide and improve service to this portion of the City.

24.     AT&T has demonstrated this significant service coverage gap in the City's administrative proceedings by submitting coverage maps, a Radio Frequency Statement, and other record evidence. These coverage maps were prepared using sophisticated, industry-standard computer modeling software that considers numerous input variables (including characteristics of AT&T's existing wireless network, terrain, foliage, buildings, and details of the Proposed Facility). AT&T uses this computer modeling software to design and build its wireless network.

///

First Amended Complaint for Declaratory and                 -7-
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

25.     These maps and other record evidence show that AT&T lacks adequate wireless service in the subject portion of the City and also explain how the Proposed Facility will address that gap. The Radio Frequency Statement explains that the Proposed Facility will provide and improve personal wireless services in the coverage gap area, and that it "is part of an effort to fully deploy 4G LTE technology in the area. Specifically, the proposed facility will close this service coverage gap and provide reliable 4G LTE service for AT&T customers in the affected area."

26.     The record evidence shows that AT&T has a service coverage gap in a very large area that is roughly bordered by Lowe's Garden Center along Warner Avenue to the north, Magnolia Street to the east, Talbert Avenue to the south, and Sampson Lane to the west.

27.     AT&T's service coverage gap is significant because the area includes many hundreds of homes in several neighborhoods, commercial areas along and near Warner Avenue, Beach Boulevard, and Morgan Lane, commercial and light industrial areas between Sampson Lane and Morgan Lane, a hospital and health care facilities, schools, parks churches, and other points of interest in the immediate vicinity.

28.     The Proposed Facility will also enhance first responder communications by providing new FirstNet services on Band 14. FirstNet is the federal First Responder Network Authority, a nationwide dedicated wireless communications network for first responders. The Proposed Facility is an important part of AT&T's commitment to support public safety, and it will provide coverage and capacity for deployment of FirstNet.

29.     To close the personal wireless service coverage gap and to provide these vital services, AT&T proposes to install a stealth wireless communications facility that will appear as a broadleaf tree in the parking lot of a church that is located in a commercial zoning district in the City.

First Amended Complaint for Declaratory and           -8-
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

**AT&T's Analysis of Alternatives**

30.      AT&T thoroughly investigated alternative sites and designs to make sure its Proposed Facility was the best available and least intrusive means for closing the service coverage gap. AT&T submitted its analysis of alternatives to the City in connection with the Application, along with additional details about the search for alternative locations, which were presented at hearings before the City Planning Commission and the City Council.

31.      Section 230.96(A) of the Huntington Beach Municipal Code encourages new wireless telecommunications facilities to be placed in commercial and industrial zoning districts and discourages sites in residential zoning districts.

32.      AT&T searched for but did not identify viable collocation opportunities in the gap area. Because most of the area is residential in character, and sites in residential locations are discouraged, AT&T searched for sites in commercial and industrial zoning districts within the gap area.

33.      AT&T's alternative sites analyses show that it initially considered twelve (12) candidate locations, including the Site and eleven (11) alternative sites, and concluded that only the Site was available and feasible for the Proposed Facility, and that the Site presents the only opportunity to close AT&T's significant service coverage gap.

34.      During the public hearings on AT&T's Application, some Planning Commissioners and City Councilmembers specified a preference for two alternative vacant lot sites along Beach Boulevard not far from the Site. AT&T previously investigated these two sites (which were among the twelve sites that AT&T initially analyzed) and determined the sites were unavailable because the property owners did not respond to multiple overtures by AT&T in April and May 2022.

///

///

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-9-

**Application Process and Hearings**

35.     On February 22, 2023, AT&T filed with the City its Application seeking authorization to construct, operate, and maintain the Proposed Facility.

36.     On April 19, 2023, the Zoning Administrator approved the Application.

37.     On May 1, 2023, a resident appealed the Zoning Administrator's approval to the City Planning Commission.

38.     The Application was scheduled for hearing before the City Planning Commission, which was duly noticed and held on June 13, 2023. Ahead of the Planning Commission hearing, City Staff prepared and published a Planning Commission Staff Report, which explained that the Proposed Facility complies with the city's General Plan and "complies with development requirements of the Commercial Office district, the development requirements contained in Section 230.96 Wireless Communications Facilities of the Huntington Beach Zoning and Subdivision Ordinance (HBZSO), and federal law (Telecommunications Act of 1996)." City Staff thus recommended approval of the Application.

39.     During the Planning Commission hearing, AT&T offered evidence of the need for this facility to close a significant service coverage gap, along with its alternative sites analysis showing that the Proposed Facility was the only viable alternative. At the conclusion of the hearing, the Zoning Administrator's decision was sustained following a tie vote by the Planning Commission.

40.     On June 23, 2023, a resident appealed the Planning Commission's decision to the City Council.

41.     Ahead of the City Council hearing, City Staff prepared and published a "Request for City Council Action," which was included with the agenda package for the hearing on AT&T's Application. City Staff again recommended approval of the Application.

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-10-

42.    During the City Council hearing on July 18, 2023, AT&T's representative presented the Application, explained the significant service coverage gap, and provided details about the analysis of alternative sites and designs, which identified the Proposed Facility as the least intrusive means to close the gap.

43.    At the conclusion of the hearing, the City Council voted 4-to-3 to uphold the appeal and to deny the Application.

44.    On August 1, 2023, AT&T representatives first received the City's July 26, 2023 Notice of City Council Action, providing its written decision to deny AT&T's Application ("Denial").

45.    The written Denial states the City Council was unable to make all required findings for approval because (a) "stealth techniques applied to the proposed wireless communications facility are not designed to blend into the surrounding environment and do not minimize visual impacts to the adjacent residential properties to the greatest extent possible," and (b) "the applicant did not demonstrate that all alternative available commercial sites for installation of a new ground mounted wireless facility or possible co-location to existing wireless antennas was infeasible."

46.    The City did not identify any alternative designs that would better blend with the surrounding environment and minimize visual impacts of the Proposed Facility.

47.    The City did not identify any alternative sites that were available, feasible, and less intrusive than the Proposed Facility.

48.    Without evaluating availability or feasibility of alternatives, the City Council identified three alternative sites that it said AT&T should have analyzed as alternatives locations for the Proposed Facility.

49.    The first two alternative sites that the City Council claimed AT&T should have analyzed were among the sites that AT&T did in fact analyze and

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-11-

summarize in the alternative sites analysis submitted in connection with AT&T's Application. Specifically, AT&T had previously ruled out as unavailable properties located at 17191 Beach Boulevard and 17262 Beach Boulevard.

50.     The third property that the City Council claimed AT&T should have analyzed is a commercial building located at 17473-17479 Beach Boulevard. There is insufficient available ground space at this property for the Proposed Facility, however; the rooftop is significantly loaded with existing equipment, and there does not appear to be sufficient space there for the Proposed Facility.

51.     On August 22, 2023, AT&T and the City entered into a Tolling Agreement to toll AT&T's deadline to commence action pursuant to the Act to October 20, 2023. The Tolling Agreement afforded the parties time to mutually investigate a possible resolution of AT&T's claims under the Act. Specifically, the Tolling Agreement afforded AT&T the opportunity to further investigate the three proposed alternative properties identified by the City Council.

52.     During the term of the Tolling Agreement, AT&T was able to make contact with the owner of the property located at 17191 Beach Boulevard. That property owner declined to lease space to AT&T for the Proposed Facility, however.

53.     During the term of the Tolling Agreement, AT&T was also able to make contact with the owner of the property located at 17262 Beach Boulevard. After some initial interest and conversations, this property owner also ultimately declined to lease space to AT&T for the Proposed Facility.

54.     Also during the term of the Tolling Agreement, AT&T attempted to make contact with the property owner of the building located at 17473-17479 Beach Boulevard. AT&T had hoped to work with this property owner to view the available space on the building's rooftop. If there was sufficient space on that rooftop, AT&T hoped to evaluate the structural feasibility of placing the Proposed Facility there. The property owner, however, never responded to AT&T's many efforts to communicate

First Amended Complaint for Declaratory and                -12-
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

about the property. All available information, however, suggests there is insufficient space at this property for AT&T's Facility. The property, therefore, is not available for AT&T's Proposed Facility.

55. During the term of the Tolling Agreement, AT&T also sought to work with certain City officials who had expressed an interest in assisting AT&T in making contacts with these property owners. Those City officials, however, did not respond to AT&T's numerous attempts to initiate a discussion regarding possible site alternatives.

56. The City's Denial is not supported by substantial evidence.

57. The record does not support the conclusory statement in the Denial that the stealth techniques applied to the Proposed Facility are not designed to blend into the surrounding environment and do not minimize visual impacts to the adjacent residential properties to the greatest extent possible.

58. Contrary to the wording in the Denial, the Planning Commission Staff Report explains that the Proposed Facility "will be minimally noticeable," will "blend in with the existing trees and landscaping of the surrounding area," and "[t]he facility incorporates stealth design techniques and is proposed in a minimally impactful location."

59. The record also does not support the conclusory statement in the Denial that AT&T did not demonstrate that all alternative available commercial sites are infeasible.

60. In fact, AT&T thoroughly analyzed alternatives and the record evidence demonstrates that there are no available and feasible alternative sites for the Proposed Facility.

61. Because there are no other available sites where AT&T can locate the Proposed Facility, and because the City has not identified any available, technically feasible, and less intrusive alternatives by which AT&T can address its significant

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-13-

1    service coverage gap, the City has effectively prohibited AT&T from providing

2    wireless services in the area of AT&T's significant coverage gap in the City.

3        62.    In the past, the City has approved applications by other providers of

4    functionally equivalent services to construct wireless telecommunications facilities

5    like AT&T's Proposed Facility.

6        63.    Specifically, the City has approved multiple applications of other

7    wireless telecommunications service providers to construct such facilities disguised as

8    faux trees in commercial and industrial districts in relative proximity to residential

9    uses, including, but not limited to, the following:

10       (a)    In approximately 2015, Los Angeles SMSA, L.P. (a/k/a Verizon

11   Wireless), which is a functionally equivalent services provider as AT&T,

12   constructed an approximately 59-foot tall wireless telecommunications facility

13   disguised as a church bell tower in a commercial zoning district located along

14   Bolsa Chica Street and within approximately 250 feet from nearby residences;

15       (b)    In approximately 2014, Los Angeles SMSA, L.P. (a/k/a Verizon

16   Wireless), which is a functionally equivalent services provider as AT&T,

17   constructed an approximately 50-foot tall wireless telecommunications facility

18   disguised as a faux palm tree in a commercial zoning district located near

19   Brookhurst Street and within approximately 80 feet from nearby residences;

20       (c)    In approximately 2014, Verizon Wireless, which is a functionally

21   equivalent services provider as AT&T, constructed an approximately 70-foot

22   tall non-stealth wireless telecommunications facility in a specific plan zoning

23   district located near Beach Boulevard and within approximately 220 feet from

24   nearby residences;

25       (d)    In approximately 2010, SBA Monarch Towers III, LLC constructed an

26   approximately 55-foot tall wireless telecommunications facility disguised as a

27   faux pine tree in a commercial zoning district located near Atlanta Avenue and

28

First Amended Complaint for Declaratory and                    -14-
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

within approximately 35 feet from nearby residences; this faux pine tree facility appears to house two separate antenna arrays of functionally equivalent services providers to AT&T;

(e)     In approximately 2003, SBA 2012 TC Assets, LLC constructed an approximately 55-foot tall wireless telecommunications facility disguised as a faux pine tree in an industrial zoning district located near Gothard Street and within approximately 280 feet from nearby residences; this faux pine tree facility appears to house one antenna array of a functionally equivalent services provider to AT&T;

(f)     In approximately 1998, SBA 2012 TC Assets, LLC constructed an approximately 69-foot tall wireless telecommunications facility disguised as a faux pine tree in a commercial zoning district located near Brookhurst Street and within approximately 100 feet from nearby residences; this faux pine tree facility appears to house two separate antenna arrays of functionally equivalent services providers to AT&T;

64.     The denial of AT&T's Application, therefore, discriminated against AT&T.

65.     There is no reasonable basis for such discrimination against AT&T and its Application in this action.

## FIRST COUNT

### (Effective Prohibition)

### (47 U.S.C. § 332(c)(7)(B)(i)(II))

66.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 65, inclusive, as though fully set forth herein.

67.     AT&T has a gap in service coverage in the vicinity of the Proposed Facility.

First Amended Complaint for Declaratory and Injunctive Relief and Request for Expedited Review
Case No. 8:23-cv-01972-FWS-JDE

-15-

68.     AT&T's gap in service coverage in the vicinity of the Proposed Facility is significant.

69.     The Site and the Proposed Facility are the least intrusive means to close AT&T's significant gap in service coverage in the subject area.

70.     AT&T undertook a thorough, good faith analysis of alternative sites for the Proposed Facility and provided the City with reasoned analysis in support of its chosen Site. AT&T investigated all alternatives suggested by the City, and no other sites were available, technically feasible, and less intrusive than the Proposed Facility.

71.     Other than the Site, there is no other available site on which AT&T can construct the Proposed Facility and remedy its significant service coverage gap.

72.     The City has not identified any available, technically feasible, and less intrusive alternatives by which AT&T can address its significant service coverage gap.

73.     The Proposed Facility would remedy AT&T's significant service coverage gap in the vicinity of the Site by means that are the least intrusive to the values protected by the applicable Huntington Beach regulations.

74.     The City did not present evidence establishing that AT&T does not have a significant gap in personal wireless service coverage in the City.

75.     The City did not present evidence establishing that the Site is not the least intrusive means to address AT&T's significant service coverage gap.

76.     The City's decision to deny the Application materially inhibits AT&T from providing and improving personal wireless services and other telecommunications services.

77.     The City's decision to deny the Application prohibits or has the effect of prohibiting AT&T from providing personal wireless services and other telecommunications services in the significant gap area.

78.     Accordingly, the City violated the Act, 47 U.S.C. § 332(c)(7)(B)(i)(II).

WHEREFORE, AT&T prays for judgment as set forth below.

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-16-

## SECOND COUNT

### (Substantial Evidence Requirement)

### (47 U.S.C. § 332(c)(7)(B)(iii))

79.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 78, inclusive, as though fully set forth herein.

80.     The Application for the Proposed Facility satisfied all of the criteria set forth in the applicable Huntington Beach regulations.

81.     AT&T presented evidence to the City justifying the need for the Proposed Facility, as well as the need for a Conditional Use Permit.

82.     The stated bases for denial – insufficient stealth techniques and insufficient analysis of alternatives – are clearly and unequivocally contradicted by the administrative record, including City Staff's reports and analyses of the Application.

83.     The City's decision to deny the Application was not supported by substantial evidence contained in a written record as required by Section 332(c)(7)(B)(iii).

84.     Accordingly, the City violated the Act, 47 U.S.C. § 332(c)(7)(B)(iii).

WHEREFORE, AT&T prays for judgment as set forth below.

## THIRD COUNT

### (Unreasonable Discrimination)

### (47 U.S.C. § 332(c)(7)(B)(i)(I))

85.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 84, inclusive, as though fully set forth herein.

86.     The Act, 47 U.S.C. § 332(c)(7)(B)(i)(I), prohibits a local authority from unreasonably discriminating among providers of functionally equivalent services. AT&T is a wireless telecommunications carrier that provides telecommunications services and personal wireless services within the meaning of the Act.

First Amended Complaint for Declaratory and Injunctive Relief and Request for Expedited Review
Case No. 8:23-cv-01972-FWS-JDE

-17-

87.     Consistent with the applicable Huntington Beach regulations, AT&T's Application proposes to install the Proposed Facility within a commercial zoning district, disguised as a faux tree. In the past, the City has granted to AT&T's competitors, which are functionally equivalent service providers to AT&T, permits to construct similar wireless communications facilities with similar impacts at a similar locations within the City.

88.     The City does not have a reasonable basis for treating AT&T differently in this instance.

89.     Without any reasonable or lawful basis, however, the City has nevertheless treated AT&T differently than competing providers of functionally equivalent services, which violates the Act.

WHEREFORE, AT&T prays for judgment as set forth below.

### REQUEST FOR EXPEDITED REVIEW

90.     AT&T hereby incorporates by reference the allegations of paragraphs 1 through 89, inclusive, as though fully set forth herein.

91.     The Act, 47 U.S.C. § 332(c)(7)(B)(v), provides:

Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis.

92.     AT&T has been adversely affected by the City's denial of AT&T's Application to construct the Proposed Facility. AT&T respectfully requests a hearing and decision by the Court on an expedited basis as provided by the Act.

WHEREFORE, AT&T prays for judgment as set forth below.

### PRAYER FOR RELIEF

WHEREFORE, AT&T prays for relief against the City as follows:

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE                    -18-

1.     For a declaration and judgment that the City's denial has effectively prohibited AT&T from closing a significant coverage gap in the provision of wireless service in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II);

2.     For a declaration and judgment that the City violated Section 332(c)(7)(B)(iii) of the Act because denial of the Application was not supported by substantial evidence contained in a written record;

3.     For a declaration and judgment that the City's denial has unreasonably discriminated against AT&T in violation of the Act, 47 U.S.C. § 332(c)(7)(B)(i)(I);

4.     For a declaration and judgment that AT&T is entitled to approval of the Proposed Facility pursuant to its Application;

5.     For a declaration and judgment that the City's actions are preempted by the Telecommunications Act of 1996 and are therefore void and invalid;

6.     For an order mandating the following:

(a) that the City grant forthwith AT&T's Conditional Use Permit consistent with AT&T's Application;

(b) that the City grant forthwith all other authorizations necessary for construction of the Proposed Facility; and

(c) that the City grant forthwith final approval of the permits for construction of the Proposed Facility;

7.     For expedited review of the matters set forth in this Complaint, as required by federal law;

8.     For an award of AT&T's costs of suit herein; and

9.     For such other and further relief as the Court may deem just and proper.

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-19-

Dated:  November 16, 2023          AT&T SERVICES, INC. LEGAL DEPT.

                                                  */s/   Raymond P. Bolaños*
                                        By: _____
                                               Raymond P. Bolaños
                                               Attorneys for Plaintiff
                                               430 Bush Street, 6th Floor
                                               San Francisco, CA 94108

First Amended Complaint for Declaratory and          -20-
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

## <u>CERTIFICATE OF SERVICE</u>

The undersigned counsel hereby certify that on this 16th day of November 2023, a true and correct copy of the foregoing document was served via electronic mail and First Class U.S. Mail, postage prepaid, upon:

Ryan E. Lumm, Esq.
Senior Deputy City Attorney
(Ryan.Lumm@surfcity-hb.org)
City of Huntington Beach
City Attorney Office
2000 Main Street
Huntington Beach, CA 92648

*Attorneys for Plaintiff*

       *s/Aaron M. Shank*

Aaron M. Shank (*Pro Hac Vice*)

23360804v1

First Amended Complaint for Declaratory and
Injunctive Relief and Request for Expedited
Review
Case No. 8:23-cv-01972-FWS-JDE

-21-